1  Hans Reiser
2  Prisoner Number 631008, no phone, no email address
3  Mule Creek State Prison
4  P.O. Box 409060
5  Ione, California  95640-9060

United States District Court
Southern District of Texas
FILED

JUL 2 5 2011

David J. Bradley, Clerk of Court

6
7          UNITED     STATES DISTRICT COURT
8              OF TEXAS     &c SOUTHERN DISTRICT

9  Reiser            | Case No. _____
10 v.                |
11 DuBois et, al.     | Complaint Under <u>Heck v. Humphrey</u>
12 See next page      | <u>114 S. Ct. 2364, 512 U.S. 477 (U.S. Ind. 1994)</u>
13 for list of all    | dicta and Article III Section 2 Clause 1
14 defendants.        |
15                    | Demand For Jury
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendants;

1 Mr. William H. Du Bois
2 Mr. Robert Navarro
3 Mr. Richard E. Farner
4 Mr. arthur Kennedy Mitchell
5 Ms. Linda Cox-Cooper
6 Ms. Denise Smernes
7 Judge Tigar
8 Judge Maclaren
9 Judge Burgess
10 Judge Goodman
11 Judge Conger
12 Dr.   Hodson
13 Dr. Dorit Bar-Din
14 Meg Zwieback
15 Dr. Evans-Ramsey
16 Stacey Franwirth
17   Ms. Shelley Gordon
18 Gail Gordon
19 Grand Lake Montessori School
20 Helen Campbell
21 Monica MacDonald
22 Morrison and Foerster
23 Sherriff Plummer and his sucessor
24 Dr. Schwarz
25 Mr. Cates
26      Seng Fong
27
28 Chet Hawkins (?) Director Alameda County C.P.S.

Stephen Elliot, Gray Wolf Press
DDA Paul Hora
Ms. Cheryl Hicks

} See also next page.

Alameda County
State of California
The United States of America
Dr. Balestin, Supreme Court of California
Pr. Jennifer McCarthy
Other C.P.S. Personnel, Alameda County
Deputies, California State Prison
Personnel, and Oakland Police
to be identified
Officer Grant
Officer Shawn Johnson
D.A. Investigator Brock
Deputy Cane
Ellen Doren
Sean Sturgeon, Erika Applin
Kathy Siegal, First District Appellate Court
The Alameda County Public Defender
Irina Sharanova
M.C.S.P. Warden Martel
the San Quentin State Prison Wardens for Sept. 5th
to January 29, 2009
Sergeant Cooper
Sergeant Rodriguez
C.O. Guzzman

John Dory / To billion

1 | Defendants (page 2):
2 | Rory Reiser
3 | Niorline Reiser
4 | Ms. P. Castillo
5 | Ms. Solis
6 | Warden Trimble
7 | Captain Herrera
8 | CDCR The R.I.C.O. Enterprise As Defined Herein, Specifically Ex-
9 | cluding Ramirez, Ardeeser, Geels, Sherman
10 | Miss Hammond
11 | Lt. Clendenin
12 | C.O. Gonzalez
13 | Sergeant Reyes
14 | Lt. Barroga
15 | Counselor Cser
16 | Kissel
17 | Flotes
18 | Captain Kaplan
19 | C.O. Alexander
20 | C.O. Grzebyk
21 | Lt. Buckner
22 | C.O. Garcia
23 | Sergeant Cooper
24 | H. Hetter (A)(4), the "r" might be a different letter
25 | person with an illegible signature
26 | D. Foston
27 | J. Morgan (D. Foreman/L. Harton
28 |

1  Grounds For Jurisdiction;
2  ) This case arises under Art. III §2 cl. 1 of the
3  United States Constitution.
4  ) There are these main issues of jurisdiction:
5  ) A. Should a wrongful death lawsuit, whose answer
6  attacks the validity of the conviction, and asserts
7  violations of civil rights, be joined in Federal court with
8  the Federal law violations of civil rights causes of action,
9  including §1983, and that in turn joined with the habeas
10 corpus proceeding, as indicated by 114 S.Ct. 2364, 512 U.S.
11 477 (U.S. Ind. 1994) Heck v. Humphrey?
12  ) B. Has California Judiciary procedurally defaulted
13 under C.C.C.P. §170.3 thereby disqualifying itself? If not,
14 then should it disqualify itself? Should this Court issue
15 a writ of mandamus in protection of jurisdiction and/or
16 a declaration of rights and/or apply §2254(b)(1)(B)?
17  ) C. Does Heck v. Humphrey (supra,) constitute grounds for
18 a Federal Court (This Court) to apply §2254(b)(1)(B) to
19 hear this case joined as one "Case or Controversy"? Does
20 the cumulative weight of the issues raised herein merit
21 the application of §2254(b)(1)(B)? If not, should this
22 court take jurisdiction of all issues herein, suspend
23 the case excepting those issues relating to interference with
24 effective access to the Court, resolve and issue orders
25 regarding interference with effective access to the
26 court (including retaliation) issues, then having done so,
27 remand the habeas corpus to state court with instruction to
28 exhaust state court remedies, then try the full case once

1   state court remedies are fully exhausted?

2

3    ) D. Does generalizing <u>129 S. Ct. 2108 Haywood v.</u>

4 <u>Drown (U.S. NY 2009)</u> properly mean that Constitu-

5 tional Amendment is the only procedure by which Congress

6 may narrow a Constitutional Right or narrow the persons

7 entitled to that Right that is constitutionally permissible?

8 Does Congress narrow Constitutional Rights, or narrow the

9 persons entitled to those rights, in the A.E.D.P.A or the

10 PLRA, without having adhered to the defined procedures for

11 Constitutional Amendment in passing that legislation? Does

12 Congress have the power to constrain only appellate jurisdiction

13 under Article III §2 clause 2, not original jurisdiction granted

14 by Article III §2 clause 1, except by Constitutional Amendment

15 ? Once it has ordained and established, does it lose control?

16 Are all separations by statute of civil and criminal cases unconstitutional?

17    ) E. When "Case or Controversy" involves falling of

18 legal dominoes, though the first and last domino make

19 no contact, are all the dominoes falling a single

20 "Case or Controversy" over which this Court may take

21 jurisdiction?

22

23    ) F. Where State, County, or their actors, interfere

24 with effective access to the Court, is that interference

25 properly considered part of the "Case or Controversy" whose

26 access they interfere with? May I properly file a

27 complaint concerning that interference in Federal Court,

28 and have it joined with a State Court proceeding affected

by that interference? Where that interference affects multiple causes of action, will require substantial litigation to establish and prove (see "Motion For Protective Order", "Supplemental Brief For Motion For Protective Order", "Ex-Parte Motion For Temporary Restraining Order, and my prison and jail related causes of action in my Cross-Complaint, all in <u>Alameda County Civil Case RG08406864 Reiser v. Reiser v, et. al.</u>   Please see also my habeas corpus, and this Complaint elsewhere herein.), and is alleged to merit the striking of answers as sanction (I so allege), is it appropriate for all that affected litigation to be joined via the aforementioned domino theory of pendent jurisdiction?

) Do I, and my minor children, have a right to counsel, and in what manner should this court take jurisdiction of current California State Court proceedings in the matter?


) G. Does the combined weight of the arguments made in the Cross-Complaint in the section titled "The Commonality of Operant Facts" in the Alameda County Civil Case RG08406864 Reiser v. Reiser v, et. al. plus those made herein justify hearing all of the causes of action as one falling of dominoes constituting one Case or Controversy?

) H. Should this Court take jurisdiction of all causes of action, but first hear those relating to interference with effective access to the courts, staying some causes of action, to allow it to right those dominoes that lie on top of the others first, rather than righting all dominoes at once?


) <u>The Issues In Detail:</u>

)A. I incorporate by reference those claims defined as "Reiser Federal Claims and Reliefs" in my "Cross-Complaint         "         filed in Alameda County Superior Court Civil Case R G08406864 Reiser v. Reiser v. et. al. , see the attached.

) I have not been allowed enough time, and legal assistance by counsel, to ensure that those claims are in the proper format, and contain all the necessary elements to state a claim, and do not contain what a court would consider to be legally extraneous material. I have asked the state court to allow me that time, and legal assistance, but it has not been granted. I ask, for it from this court.

) My:

    I. Defense/Response in Alameda County Civil Case R G08406864 Reiser v. Reiser v. et. al. ;

    II. Cross-Complaint in Alameda County Civil Case R G08406864 Reiser v. Reiser v. et. al. ;

    III. Joint appeal/habeas corpus, and all other proceedings in relation to People v. Reiser Alameda County Docket Number 154825 including my petitions for writs of mandamus; and

    IV. This complaint;

all:

    (i) Have a common nucleus of operant facts;

    (ii) Attack the validity of my conviction;

    (iii) Together constitute a Case or Controversy arising under Article III §2 cl. 1 of the U.S. Constitution;

1   "The judicial Power shall extend to all Cases, in
2   Law and Equity, arising under this Constitution..."
3   (iv) Should be joined as indicated by 114 S. Ct. 2364,
4   512 U.S. 477 Heck v. Humphrey (U.S. Ind. 1994)
5   ) Where I refer to Reiser v. Reiser v. et.al. I refer to Alameda County Case (Civil)
6   R608406864 originally titled Reiser v. Reiser to which I seek to add parties.
7   ) Where I refer herein to the Cross-Complaint, I refer
8   to both "Reiser State Claims and Reliefs" and to
9   "Reiser Federal Claims and Reliefs",

10

11  **Heck v. Humphrey Provides Jurisdiction:**

12  In a case of first impression (I believe) I ask you to implement

13  dicta in the concurrence (which is not contradicted by the other

14  justices even indirectly) in Heck v. Humphrey 114 S. Ct. 2364,

15  512 U.S. 477 (U.S. Ind. 1994) allowing a habeas corpus proceeding

16  and a §1983 action to be joined into one proceeding.

17      While such dicta is not controlling, I hope you will forgive

18  this pro per bereft of legal counsel for choosing to obtain his

19  legal advice from such a source, and not treat this legal tactic

20  as frivolous.

21      Once you allow in the §1983 action, the whole civil lawsuit

22  naturally comes in as well.  There are substantial economies

23  of justice in that.

24      "a prisoner caught at the intersection of §1983 and the habeas

25  statute can still have his attack on the lawfullness of his con-

26  viction or confinement heard in federal court, albeit one sitting

27  as a habeas court; and, depending on the circumstances, he may

28  be able to obtain §1983 damages." Heck v. Humphrey (supra.)

1   )B. Invocation Of §2254(b)(1) By The Disqualification
2   Of The California State Judiciary:
3      ) There are two subissues herein: (I) can the California
4   Judiciary      repudiate its procedural default under
5   C.C.C.P. §170.3, and (II) should it be disqualified for the
6   purposes of §2254(b)(1)(B) regardless of whether it is
7   disqualified under C.C.C.P. §170.3?
8      ) I. Procedural Default under §170.3  : I assert
9   my right to finality of judgment according to the
10  U.S. Supreme Court in 126 S.Ct. 2669, 548 U.S. 331
11  Sanchez-Llamas v. Oregon (U.S., Va, 2006) "Procedural
12  default rules are designed to encourage parties to
13  raise their claims promptly and to vindicate 'the
14  law's important interest in the finality of judgments'
15  [citing] Massaro, 538 U.S. at 504, 123 S.Ct. 1690".
16     ) I assert my 14th Amendment right to the enforcement
17  of State Laws.
18
19     ) On 5/20/10 by Houston v. Lack (U.S., Tenn, 1988) 108 S.
20  Ct. 2379, 487 U.S. 266   I filed a challenge for cause,
21  "Statement/Challenge For Cause of Judge Goodman, and the
22  California Judiciary Re: Habeas Corpus and Appeal Related
23  Proceedings Including FW-006", see it and its proof of
24  service.  The proof of service has not been disputed, and
25  can be verified by comparison with mail logs, and the signed
26  envelope which under California Law is retained with filings
27  by prisoners, and which is dated by a Correctional Officer. We
28  can verify the date of mailing by subpenaing witnesses also.

1   ) Clerk Date Falsification:

2   ) Clerks of the Alameda County Superior Court falsify

3  dates as a matter of common practice.  They did this in

4  my divorce case, and were caught at it when they

5  backdated a document to be stamped as filed before the

6  occurrence of events referenced in the document. Mr.

7  John J. Feery can testify to their practices in this

8  regard, and to their computer dates not corresponding

9  to their date stamp dates,  Based on information and

10 belief I allege that an audit will prove they perform

11 such "favors" commonly, and ask that such an audit be

12 ordered by the court.  The California State Judiciary

13 systematically protects its clerks from complaints of

14 such behavior, having close relationships with their

15 clerks.  In this case Clerk Fil R. Cruz seems to have

16 falsified dates to protect Judge Goodman.

17 This widespread systemic corruption may not involve

18 bags of cash, but the performance of favors for their

19 social networks does every bit as much damage to

20 14th Amendment rights as bags of cash, or arguably

21 more.  It violates the Ku klux klan Act.

22    ) Clerk Fil. R. Cruz falsified a certificate of mailing

23 for  Judge Goodman's denial of my  certificate of

24 probable cause, and by great luck C.O. Snow is a witness

25 to that, for we discussed it being missing from the

26 envelope            he opened.

27    ) My challenge for cause was stamped as filed

28 June 15, 2009. (That stamp is legally irrelevant

**MOTION FOR**                                    **PAGE NO.**
Case Number:

1  by <u>Houston v. Lack (supra.)</u>, except that they didn't
2  realize that, so it is legally relevant as evidence of
3  consciousness of guilt, falsification of a state document,
4  systemic corruption in violation of the Ku Klux Klan
5  Act, my inability to enforce my civil rights in State
6  Court, and grounds for imposition of sanction by
7  this Federal Court.  Yes, I understand it is only one data
8  point, but I have many other such data points, and I do
9  want to put Clerk Cruz, Judge Goodman, and the Head Clerk,
10 on the stand and see if some truth can be shaken out of
11 them.)
12    )(I allege the above to be a representative data point,
13 affecting multiple causes of action in addition to the
14 applicability of your jurisdiction.)
15    ) In the envelope with and accompanying the Challenge
16 For Cause was a request for performance of service of
17 the Challenge For Cause.   That has not been disputed.
18    ) Judge Goodman signed an "ORDER DENYING
19 CHALLENGE FOR CAUSE TO JUDGE LARRY GOODMAN
20 FILED JUNE 15, 2010", signature dated "JUN 18 2010",
21 endorsed filed "JUN 21 2010".  Note how the title of the
22 order emphasizes the claimed date of filing, which
23 emphasizes his consciousness of guilt in its falsification,
24 and willingness to take unfair advantage.
25
26    ) The order fails to mention my request that service be
27 performed, and fails to mention the signed date (signed by a
28 Correctional Officer according to standard prison policy for legal

1 mail.) on the envelope, or its postmark, both points
2 relevant to .
3 the impeachment of the filing datestamp by the
4 clerk. The clerk is Judge Goodman's personal clerk,
5 see earlier.
6     ) By California Statutory Law, the envelope must be
7 retained with the filing, since I am an inmate.
8     ) Mail from the prison it was mailed from (Mule
9 Creek State Prison) normally arrives the next day, when
10 sent to San Francisco/Oakland addresses, such as the
11 Challenge For Cause was sent to.  It does not take 21 days
12 to arrive (May 20th, 2010 – June 15th, 2010 = 21 days). (This is
13 only relevant to it being a falsified state document, the
14 application of Houston v. Lack (supra,) depends solely on the
15 proof of service date of May 20th, 2010).
16     ) The State Courts refused to provide me with a copy of
17 the record, indicating a consciousness of guilt, obstruction of
18 justice, denial of due process, and systemic corruption
19 prohibited by the klu klux Klan Act, including §1983, and
20 my inability to obtain the enforcement of my equal, and
21 other, civil rights from California State Courts,      and
22 making                       application by the Court of
23 §2254(b)(1)(B) appropriate.  This includes denying me access to
24 the envelope, and proofs of service/  certificates of mailing
25 that may be incriminating by being impeachable in comparison
26 with prison mail logs, or simply missing  in relation to the
27 order denying me a certificate of probable cause.  They conceal
28 their systemic corruption by systemic denials of access to the record, in

1 violation of the Kuklux klan Act, including §1983, and
2 §1985, and §1986, and in violation of the 14th Amendment (Bivens)
3 These acts are evidence that the hive mind of the California
4 State Judiciary suffers from denial and repression, the curing
5 of which conditions are the motivating purpose of the 14th
6 Amendment and the kuklux klan Act.
7 ) C.C.C.P. §170.3 (c)(4) provides that when a judge fails
8 to respond to a challenge for cause within 10 days they
9 are deemed to have accepted disqualification. Houston
10 v. Lack (supra,) applies to personal service identically
11 to how it applies to service by mail — I requested that
12 service be performed, requesting it of both clerk and
13 Superior Court simultaneously, and that request left
14 my control on May 20th, 2010 when it was placed into
15 the prison institutional mail, becoming legally served
16 at that moment. — personally served.
17 ) The Legislature chose its wording of §170.3(c)(4)
18 with good cause. It allows judges to disqualify
19 themselves without making an admission, which encourages
20 judges to take a pass on a case when the conflict is
21 arguable rather than arguing it. It also prevents
22 them from playing the sorts of improper games with
23 a challenge that were played in this case. It economizes
24 and expedites justice, ensuring that calendaring of the
25 challenge is unmanipulatable. That is especially appropriate
26 when there indeed is a conflict. As procedural default
27 rules go, the wording is rather forceful and inescapable, intentionally
28 so.

---

**MOTION FOR**                                    **PAGE NO.**
Case Number:

1  ) I ask this Federal Court to therefor protect §170.3 from
2  judicial activism that seeks to interpret §170.3 as having other
3  than the plain meaning the Legislature gave it, and enforce 503
4  U.S. 249, 253-254, 112 S. Ct. 1146, 117 L. Ed. 391 Connecticut National
5  Bank v. Germain (1992) "We have stated time and again that courts
6  must presume that a legislature says in a statute what it means
7  and means in a statute what it says there."   To do otherwise is to
8  give a form able to walk the day to the Supreme Court's nightmare
9  that: "Then the will, it may be the unbridled will, of the judge, would
10 usurp the place of the constitution and the laws, and the violation
11 of one provision is liable to speedily become a precedent for another, perhaps
12 more flagrant, until all constitutional and legal barriers are destroy-
13 ed, and none are secure in their rights. " 9 S. Ct. 651, 130 U.S. 622,
14 Lake County v. Rollins (U.S. Colo. 1889) quoting Law v. People, 87 Ill. 395

15

16 ) II .  In addition to their having disqualified themselves,
17 they should be disqualified and/or invocation of §2254(b)(1)(B)
18 granted, for these reasons to be explained in detail:
19 ) 1) They are a party,
20 ) 2) Since the time of the ku klux klan it has been the role of
21 the Federal Courts to be an alternate route for parties concern-
22 ed about (to use the lingo of modern sociology) State Judiciary
23 Hive Mind Mental Disorders of delusion, and its prerequisites of
24 repression and denial.
25 ) 3) Heck v. Humphrey (supra,) propagates conflicts from the civil case
26 Reiser v. Reiser v. et. al. (supra,) to the habeas corpus, and back from it.
27 ) 4) Heck v. Humphrey (supra,) creates conflicts.
28 ) 5) State Actors are interfering with my effective access to

the court, including State Court Clerks, State Prison Staff, County Jail Staff (past conduct contributing to a continuing crime), and State Court Ex-Parte Communications. The State Courts also denied me counsel, and a copy of the record, both contrary to law.

) 6) I ask this Court to find that where a defendant has established a history of futile complaint prior to killing someone, the State Courts should not be the ones to determine if their non-response to the complaint, violations of civil rights, retaliation, and suppression of evidence of their violations of civil rights that amounted to the aiding and abetting of felony child abuse, caused a death, by creating conditions that justified an otherwise unnecessary and avoidable homicide.

) 7) The damages are large compared to the troubled State Budget, if calculated as proportional to the value of the scientific research lost.

) <u>The Details:</u>

) 1) They are a party. Without reaching the merits of the case against them, that should be sufficient. A judge should not hear a case in which the judge is sincerely <u>alleged</u> to be culpable, not merely cases in which the judge is <u>proven</u> during pleadings to be culpable, for these general reasons of which a) is especially applicable: a) Proof requires a full trial, not a motion or pleadings, before a jury. b) An innocent judge will be biased by a sincere allegation, especially if it remains believed by the accuser, and c) the reputation of the legal system is damaged (even if the judge is innocent) if he determines his own innocence.

) I have complex arguments attacking their judicial immunity, see elsewhere in this complaint and the cross-complaint, especially the section "Absolute Immunity Dependent On Adversarial Nature Of Proceedings", and since they are not trivial or frivolous, they should be heard by another court than them, in full.

1  ) 2) The 14th Amendment, the ku klux klan Act, and
2  Federal civil rights laws generally were, to use the lang-
3  uage of intellectuals of this millenium, concerned that
4  the hive mind of state court systems suffered from
5  denial, repression, and delusion, in some cases.
6  ) For that reason they made it possible to enforce
7  civil rights laws in Federal Courts. The bigger hive mind
8  may in some cases not suffer from the same flavors of
9  denial, repression, and delusion, and that was motivation
10 enough for amending the Constitution.
11 ) It is important to distinguish allegations that a lone
12 judge went rogue, and violated civil rights, from allegations
13 that a state judiciary hive mind violates civil rights
14 while exhibiting symptoms of (non-bizarre) delusionality,
15 denial, and repression, as I hereby allege,
16 ) When a lone judge goes rogue, the state appellate
17 courts can handle that.
18 ) I accuse the hive mind of the California State
19 Judiciary of the mental disorders of (non-bizarre) delusion-
20 ality, and its prerequisites of repression and denial. These
21 stem from my divorce custody proceedings, and progressed
22 from there.
23 ) Their delusional belief that my children suffered P.T.S.D.
24 due to violent computer games borders on the bizarre
25 flavor of delusionality, but I have not affixed that
26 label to it here. (My children are not the slightest afraid of the games.)
27 ) That belief was embraced by two California
28 State Judges, and protected by all the other

1  California State Judges.

2      ) A gag order was issued, which is evidence of
3  repression. It solely served the purpose of protecting
4  the California State Judiciary, and was not desired by
5  myself or the children.

6      ) My son was eager to tell the Judges that he had
7  not the slightest fear of computer games. They did
8  not let him testify, nor did they let          his sister
9  testify. This proves denial and repression mental
10  disorders in the hive mind.

11      ) I informed the California State Judiciary that their
12  methodology, which involved not observing the children that
13  are alleged to have ailments before making custody
14  decisions concerning them, was anti-scientific in its
15  methodology, and based on sexual, cultural, political,
16  and sexual orientation bias (I am a straight male of
17  the        unemasculated flavor that inspires bias from
18  lesbian feminists. This was occuring in
19  Oakland, the lesbian capital of the world.)

20      ) My allegations resulted in court orders barring me
21  from taking the children to see experts qualified to
22  prove my allegations.

23

24

25      Those court orders          evidence denial and repression.

26      ) My wife had Factitious Disorder By Proxy. This
27  was far more serious of an issue than the PTSD due to
28  violent computer games.

1   ) Factitious Disorder By Proxy (FDBP) has a 5-10%
2 mortality rate, and         is normally sustained severe
3 felony child abuse.

4   ) All it took was a court order, and the order's enforce-
5 ment, to stop it. Since it was identified in the very early
6 stages, a severe tongue lashing by the judge might even
7 have taken the fun out of it before its addictive qualities
8 took hold.   If even mild disapproval of the falsifying
9 of illnesses had been expressed, I would have left all of
10 it to the legal system to handle, and not killed my wife.

11   ) The denial and repression were too powerful for
12 the California State Judiciary in Alameda County to
13 allow any ailments to be diagnosed as Factitious, I
14 tried, -         the details are in the Cross-
15 Complaint in Alameda County Civil Case R G08406864
16 Reiser v. Reiser v. et. al. , I was barred from taking
17 the children to see a specialist in F.D.B.P. , and my
18 wife (alleging the imaginary ailments listed in that
19 Cross-Complaint) was given sole medical custody to
20 ensure that I could develop no evidence to support
21 my allegations of bias.

22   ) That this endangered a child caused them
23 not the slightest concern. Like prison mainliners,
24 for them protecting children is about hurting adults
25 not helping children: children just aren't really inter-
26 esting. That's part of why they avoid talking to
27 them — that and protecting desired delusions from
28 exposure to the light of reality.

1   ) It became objectively clear that I would not be
2   able to overcome this denial, repression, and delusion. I
3   read a textbook on F.D.B.P., and it said the (state) courts
4   are effective in handling F.D.B.P. cases ~25% of the time.
5   The women who have it . thrill at the con of cater-
6   ing to delusions, and are masters at it.  It was obvious
7   that I would not be in the 25%, nor would Rory.

8   ) I contacted the Alameda County Board of Supervisors
9   and met with Supervisor Gail Steele and her staff,
10  getting a positive response.  Her informing me that
11  it had taken her 8 years to reform the Probation
12  Department, and that I should expect it would take
13  until the end of her 6 year term to reform Family
14  Court Services, occurred a few days before I killed Nina
15  Reiser.  It seemed a reasonable well-informed objective
16  estimate of the time required to make scientific
17  methodology mandatory and the norm for custody evalua-
18  tions.  Hive minds change minds slowly, and learn skills
19  slowly.

20  ) After Nina's death the Alameda County Juvenile
21  Court siezed my children using the PTSD due to violent
22  computer games, and other equivalently delusional reasons,
23  as their reason why.

24  )(I believe that my lawyer Mr. DuBois was leaking
25  my involvement in her death to all of his colleagues, but
26  the Juvenile Court did not know that he was going to
27  throw the case, and they knew there was not enough evidence
28  for them to win, so they avoided relying on my having killed her,

1  [Given that one of the settings in which he leaked my having
2  killed her was National TV, the Court should regard this as
3  a reasonable belief, not paranoia.])

4  ) The Juvenile Court found that there was PTSD due to
5  violent computer games in       a "non-adversarial"        trial
6  in which the proceedings were rigged to an extent that
7  the ku klux klan would envy.

8  ) The invidious discrimination was heavy. County
9  Counsel was a suspender-snapping bull dyke, and the
10 Judge let her run the court room.  Judges have been
11 seen to shake their heads at the transcript, regarding it as
12 an embarassment.  Indeed, the transcripts were suppressed
13 from the public, wrongfully, and in an act of Hive Mind
14 Repression.

15 ) The children were kidnapped in defiance of court
16 orders to Russia, not once, but twice.

17 ) The DDA Paul Hora, my court appointed attorney Mr. Du
18 Bois, C.P.S., County Counsel, my court appointed attorney Mr.
19 Arthur K. Mitchell, all conspired        in the kidnapping.
20 I was not allowed to call the Juvenile Court to warn the
21 Judge that the kidnapping would occur, and my lawyers
22 refused to call the court for me.  I was told by Mr.
23 DuBois in advance that it would occur.  When the new to
24 the case Juvenile Court Judge Pullido was furious, and wanted
25 to hold contempt of court hearings, he was stepped on by
26 the Appellate Court, who Mr. Du Bois had ex-parte commun-
27 ications with at least once that he told me of.

28 ) My side of the family not having communications with

1  the children, and Judge Pullido not having communications
2  with the children,           and no expert
3  selected by me having communications with the children,
4  was necessary to the preservation of the delusion,
5  by the hive mind.
6     ) I was offered a 3-year deal before trial. I
7  agreed to accept it if I could have someone I could trust
8  verify that the children were safe.  The maternal
9  grandmother had started inventing ailments in the children
10 (see table of falsified ailments in the cross-complaint in the
11 civil case (RG08406864 Reiser v. Reiser v. et. al.) ), including
12 neurologic incapability of travel to America, ADHD, asteno-
13 neural syndrome, etc.)   This condition was rejected
14 out of hand. (I declined the deal as immorally placing
15 my welfare above      the safety of a child that I was
16 responsible for the safety of,  I don't think these people
17 could even grasp that                     such an
18 ethical issue could exist, and determine real conduct,  I
19 understood the false claims to be a threat to the safety of the
20 children, which was intended to be       perceived by me
21 as a threat.)   The rejection of the condition was in
22 furtherance of the delusion, and was  hive mind repression.
23     ) Equivalence of hive mind mental disorder model and model
24 of the authors of the Ku Klux Klan Act and the 14th Amendment:
25 State Court Judges want     to be treated as individuals, not
26 as a hive mind. Factually, sometimes they are one, and
27 sometimes they are the other.  In this case, they have been
28 a delusional hive mind, and have engaged in repression and

1  denial. That is just 21st century intellectual lingo
2  for having been so filled with bias and discrimination
3  that they denied me due process and equal protection under
4  the law, and denied it to my innocent son.
5      ) When I killed my wife to protect my innocent son, they
6  could not allow me to make that defense. I can only make
7  that defense in Federal Court. That is what the 14th
8  Amendment is all about: preventing a state court
9  judiciary from denying a man a defense for reasons of
10  collective bias. (Elsewhere I make longer more detailed
11  arguments of delusion, bias, repression, denial, and the
12  defense itself.)
13      ) I claim not that the California Judiciary is a
14  Hive Mind as a matter of law, but rather that it is a
15  Hive Mind contrary to law.
16      ) Failure to perform due diligence in auditing for
17  Hive Mind behavior allowed and allows it to behave as
18  a Hive Mind. They disable their needed checks and balances.
19      ) Failure to bar improper fraternization and communi-
20  cation between State Actors within the legal system
21  contributes to its behaving as a Hive Mind, especially
22  communications off the record.
23      ) Communications off the record are the primary basis
24  for Alameda County Superior Court and Juvenile Court decisions,
25  in fact, and contrary to law.
26      ) Such communications are a major cause for my
27  belief that social factors, not the facts and the law,
28  denied me effective legal recourse in Alameda County.

MOTION FOR                                    PAGE NO.

1   )3) Conflict Propagation due to <u>Heck v. Humphrey (supra)</u>:

2 The State Courts, having the conflicts alleged else-

3 where herein     in regards to the civil case RG08406864

4 Reiser v. Reiser v. et. al., have as a result an interest

5 in either procedurally defaulting against me, or making

6 factual findings against me that the Federal Courts

7 must deferr to according to some case law, so that

8 <u>Heck v. Humphrey (supra)</u> will bar me from holding them

9 liable in an action that challenges the validity of my

10 conviction, (especially the argument that their

11 repression of evidence and aiding the abuse of a child

12 makes them civilly liable under felony murder state

13 law, but also the mere reputation damage that

14 would accrue from my making that argument

15 successfully).

16   ) They failed to disclose this conflict to

17 me at trial, and failed to disclose the conflict

18 during    plea negotiations.

19

20   )4) Conflict Creation due to <u>Heck v. Humphrey (supra)</u>:

21 My court appointed lawyers, the judges, the DDA,

22 the police, C.P.S., County Counsel, the Public Defender, in

23 short the whole local legal system, even the clerks,

24 once they committed a single wrong against me,

25 acquired a legal incentive to commit any wrong

26 necessary to ensure I would never be proven innocent,

27 so as to immunize themselves from legal liability by

28 virtue of <u>Heck v. Humphrey (supra)</u>.

1   ) Once my lawyer Mr. DuBois decided that he
2   was going to lose the case, he acquired an incentive
3   to lose it so thoroughly that I could not hold him
4   liable for it because of <u>Heck v. Humphrey (supra.)</u>.
5   He acted motivated by that incentive (e.g. telling
6   the press that I was guilty, and doing so on National
7   TV, to force me into a plea deal).
8   ) This conflict was not disclosed to me. I am
9   therefor entitled to a new trial, and the exclusion of
10   all evidence with myself or my attorney as the source.
11   ) These are good reasons for reversing <u>Heck v.</u>
12   <u>Humphrey (supra.)</u>, but even a reversal does not
13   remove the conflict for past cases including mine.
14   ) Mr. DuBois has a fascination for how to game the
15   system, generally.   I remember times when he failed to
16   remember I was in the room seemingly, or just plain slipped,
17   and failed to conceal that he, the judge, and the DDA,
18   were cooperating to ensure that motions were not
19   appealable.   I believe that is why he had me take
20   the stand and tell a story at his direction that he knew
21   would not be believed: it made the case unappealable, or
22   so he thought, having denied me the F.D.B.P. defense
23   that was the one I wanted to make. (It certainly did
24            deeply damage me on every level, from core
25   personality to reputation to credibility to legal case.)
26   ) I do not allege this conflict as
27   an intellectual technicality; I believe it had a power-
28   ful impact on the course of my case.

---

**MOTION FOR**                                    **PAGE NO.**

1   ) 5) State and County Actors, and those conspiring with
2   them, interfered with my effective access to the State Courts
3   and this Court, and continue to interfere with it.
4   ) That interference included these forms:
5   ) a) Interference with my ability to prove that
6   my children needed protection and defense, that the
7   custody determination process in Alameda County is biased
8   and anti-scientific, and in general those issues that I
9   alleged prior to Nina's death. This interference continues
10  to this date: I am still not allowed to have experts
11  examine the children, and I believe that any
12  state court judge who tried to have experts examine
13  the children would get stepped on by the California State
14  Judiciary. I saw Judge Pullido of the Juvenile Court get
15  stepped on for merely trying to lay eyes on the children.
16
17
18  ) b) Communications Denial Causing Counsel Denial: Please
19  see the "Communications Denial Causing Counsel Denial" section
20  of my "Motion For Appointment Of Counsel" in Reiser v. Reiser v.
21  et. al (supra). Jails and State Prisons require that all
22  phone calls be collect, and create numerous other severe
23  restrictions on calls. Collect calls to persons not close relatives
24  cannot be expected to be accepted, and are socially and morally
25  inappropriate. The restrictions prevented my switching
26  counsel as one very significant actual injury, making
27  my efforts to switch counsel factually ineffective. There
28  are jail recorded phone calls of me pleading with relatives

---

**MOTION FOR**                                      **PAGE NO.**

1  to find me a new lawyer, and them refusing to make the
2  calls.   The cited section makes the legal argument.
3      ) The communications denial not only frustrated my
4  ability to contact counsel to make the switch, it
5  frustrated my ability to earn funds to hire the new
6  lawyer.
7      ) See "Motion For Appointment Of Counsel" in <u>Reiser v.</u>
8  <u>Reiser v. et. al (supra,).</u>
9      ) If allowed access to a cell phone and a laptop in the
10 cell, I would have and could have earned the funds needed,
11 and switched lawyers, probably to Daniel Horowitz.
12     ) I sensed that Mr. DuBois did not want to like me,
13 and I remember worrying that that was the most
14 dangerous possible tell, much more so than someone
15 simply not liking me.  Combined with his being socially
16 well integrated into the county legal system, and other
17 hints of danger, and his being opposed to an F.DB.P. based
18 defense, and suspicions that he was betraying attorney
19 client confidentiality, I had reasons to want to change lawyers.
20     ) Persons out on bail are allowed access to laptops and cell
21 phones. There is insufficient security need for allowing
22 those out on bail access to laptops and cell phones, and
23 allowing mainliners who pay extra to prison guards to
24 have them, but not allowing those  . in jail to have
25 them. 482 U.S. 78 Turner v. Safley (1987) describes
26 4 factors describing whether an accomodation can be denied,
27 including 4) whether the denial represents an exagger-
28 ated response to prison concerns.  The need to pay a lawyer

MOTION FOR                                    PAGE NO.

1  is a serious need, as is the need to contact others during a
2  defense, and the need to switch from a dishonest lawyer to a
3  better one.  Horowitz seemed to genuinely like intellectuals, but
4  I was told he wanted to get paid.  Because he did not have
5  a psychological need to prove his superiority by duping and
6  betraying intellectuals, I could have trusted his guidance,
7  and I doubt that betraying the safety of my children
8  would have been a plea condition, or that they ever would
9  have been lost to Russia.   Those events are therefor a
10  consequence of the communications denial causing me to be
11  unable to maintain my business in operation, and it folding, and
12  my not being able to have the attorney of my choice
13  as a result.
14     ) The same communications denial prevented my finding
15  a compatible attorney willing to work for the publicity.
16     ) My Aunt Jeanie Egge said to me, on a jail
17  recorded phone call, that she had spoken to a friend who
18  was a Federal Judge, and had been advised that on no
19  account did I want a public defender. Mr. DuBois told
20  me that if I switched to a public defender, he would
21  not review any of the discovery with me, and would
22  just show up at the trial. Mr. DuBois said that
23  he was head of the court appointed attorn ies panel of
24  the local County Bar, and ·govern·or of the State Attornies
25  Association (I may have the title inexact).  I had good
26  cause to fear that an attorney not of my selection would be
27  just as politically motivated against me as Mr. DuBois.
28  Communications denial crippled my ability to select and contact an