1  attorney independent of the hive mind of the local county
2  court system — one willing to do an F.D.B.P. based defense.
3      ) As best I can tell, the prosecution had an attorney
4  and an investigator working full-time on my case for 18
5  months, with bursts during which 90+ people were on my case,
6  and there was a 6 month trial.
7      ) By contrast, I was not allowed a 1 hour consult with
8  an F.D.B.P. expert. I told my lawyer I wanted to have 3
9  weeks of expert testimony on F.D.B.P. before I took the
10 stand, so that my testimony would be credible. When I
11 asked him to read a textbook on F.D.B.P., which would
12 have taken 5 days to read, he lied and said he had read
13 it. After the trial, I became suspicious, and from quizzing
14 him about the book's contents learned he had never read it.
15 The money that I had my relatives earmark for a P.I. and
16 experts my lawyer took for himself so that I could not
17 spend it on the P.I. and experts on F.D.B.P.
18     ) Mr. DuBois was upset that I had not paid him enough,
19 especially not enough to reject the deal he was offering me,
20 and go to trial.
21     ) Mr. DuBois got himself court appointed / County/State
22 paid for. Still no expert in F.D.B.P., even for 1 hour, no
23 matter how I pleaded for one, and I pleaded for one at length.
24 Instead he told me to take the stand and lie,          at his
25 direction. In retrospect, he knew that his coaching encouraged
26 what a jury would find fantastical. In retrospect, he and his
27 experts patched all the holes in the DDA's case. He told the
28 press that I was insisting on taking the stand, and told me that

1  his saying that made me sound innocent, that an innocent man
2  would want to take the stand.  Indeed, it was a lot of work
3  for them to keep me from talking to the press about how Nina
4  had F.D.B.P. prior to my arrest.  Details on request.

5  ) Mr. Du Bois could have won the case with a lie, he has the
6  gift, and working as a team we could have won with the
7  truth, for that is my gift.

8  ) That he could have won combined with the fact
9  that it was in his rational interest to win, my relatives
10  insisting that Ad-Seg was making me paranoid and
11  that it was in his interest to win so he wants to win, the
12  communications denial, the psychological effects of Ad-Seg
13  making me think my relatives might be right about the
14  paranoia, the loss of my children to Russia, the threats
15  to their safety, having no one I could talk to confidentially
16  , and the denial of funds and communications to switch
17  lawyers.

18  ) The DDA (Paul Hora) monitoring the jail recorded phone
19  calls, informed Mr. Du Bois of my efforts to obtain different
20  counsel, engendering animosity and retaliation by doing so, denying
21  me confidentiality in switching counsel, and improperly interfering
22  with my switching lawyers by this exertion of improper leverage.
23  Even lawyers admit that lawyers hate those who try to dump
24  them, passionately so.

25  ) The State and County have no right to deny me the
26  funds necessary to make the honest defense, and neither does
27  any subcontractor of theirs.  This unequal funding, lavish
28  in support of prosecution, but not providing me either with

1  effective counsel, or allowing me the communications capability
2  while in jail to select and fund my own effective counsel, or
3  recruit one willing to work for publicity, is a violation of
4  the 6th Amendment, the California Constitution article I §15,
5  California Penal Code §686 (which I have a 14th Amendment right to
6  the enforcement of), and the clauses of both the State and Federal
7  Constitutions for due process, equal protection, and fair trial.
8      ) I asked to be co-counsel, after being denied control
9  over my defense, and this was denied. I did not feel I had the
10  legal skills        necessary to be completely without legal
11  assistance at a murder trial. I wanted the effective
12  assistance of counsel, not to have my defense controlled by
13  counsel. The assistance of counsel was made contingent
14  on accepting the defense being under the control of counsel,
15  who denied me the honest defense. To read the 6th
16  Amendment as allowing me to be denied the assistance of
17  "counsel" unless I accept being denied all ability to make
18  true testimony by me credible to the jury      by use of
19  expert witnesses on F, D, B, P, and other preparatory
20  evidence, when that testimony won't be any more credible
21  to the jury as a defense than it is to my lawyer without that
22  preparatory evidence, is contrary to Connecticut National
23  Bank v. Germain (supra), and Lake County v. Rollins (supra.), as
24  cited, and as quoted, previously in relation to §170.3. Making
25  counsel "Captain" not assistant under the 6th Amendment is an
26  act of judicial activism in its interpretation, and I ask that it
27  be considered abrogated by Connecticut National Bank v. Germain (supra.)
28  I sought "counsel", and got an S+M'er, literally, placed in control,

1  as the price required of me for me to obtain that counsel.
2  The Framers did not give me the right to be "represented
3  by an advocate", they meant what the words "counsel"
4  and "assistance" say, and not something else that lawyers
5  want to be, or even feel they need to be.
6      ) There are clients who cannot be understood by
7  their counsel without consulting experts they counsel
8  are too proud to consult, or too uneducated to know
9  they need to consult. If law is like other fields, only
10 the very best know what they don't know, I was such
11 a client. Perhaps most scientists are on trial for matters
12 not requiring intellect and education to assess their
13 motivations, when they enter a courtroom.  I was on trial for
14 protecting a child from a danger that a study showed is beyond
15 the expertise of ~75% of state courts, when a state court would
16 not protect him.
17      ) I do not allege a well-coordinated conspiracy involving
18 the fiendishly clever. I allege that all the players think that they
19 are smarter than those who wrote our Constitutions and Laws, and
20 so they seek to cut through all the red tape in the Constitutions.
21 Being people manipulators, they then manipulate each other off the
22 record, confident that they themselves will never be manipulated,
23 confident that they don't need the rigors of the full-blown adversarial
24 process when getting "the real story" while talking to their friends
25 and colleagues for the last 20 years, but of course they do, oh do
26 they ever.
27      ) When I the hateful straight male scientist comes in, of
28 the kind that they feel was always raising their hand in class to

1  show off, and starts talking about things they don't understand that
2  involve some obscure incomprehensible graduate level psychiatry
3  textbook, well, clients aren't supposed to read obscure incomprehens-
4  ible psychiatry textbooks, only expert witnesses do that, ~~incomprehensible~~
5  and the experts deliver the required results when they do that
6  or they don't get repeat business (Du Bois and Silva told me this
7  part regarding expert witnesses and repeat business), so of course none
8  of them pay any attention to that stuff if it disagrees with
9  their needs and common sense, for good reason most of the time.
10 This just wasn't most of the time is all.  Here I the client
11 am handing them the textbook, clueless that it is incomprehensi-
12 ble to them, expecting that they will read it, so Du Bois
13 lies and says he read it.  Linda Cox-Cooper said it was too
14 theoretical before I tried to dump her, and she sabotaged
15 the custody case to ensure that I could not gain anything by
16 switching lawyers, thereby not dissuading me from switching law-
17 yers, but being a necessary cause of my complaint being futile.
18 I told Mr. Du Bois about that before he lied about reading the
19 textbook, and told me that he had 30 years of experience, and
20 I should just place myself in his hands like ~~because~~ he was
21 a surgeon.  He really liked that line; it is a good one.
22      ) Consider that I ~~did~~ was bewildered by learning, from Du Bois
23 telling me it, that people don't really like scientists, even though
24 they spend all their lives bettering humanity for little money,
25 and I have trouble feeling intuitively why it is that the graduate
26 level psychiatry book with its objective case studies isn't easy
27 convincing reading, but I know citing it somehow gets me nowhere.
28      ) Now I understand that I need to put real F.D.B.P. victims on

1  the stand, and step them through their 100+ operations each, and only
2  afterwards when it has been made real, put F.D.B.P. experts on the
3  stand, and then myself. Until ~~oooooo~~ 5 F.D.B.P. victims have
4  testified, no attorney who is not a scientist willing to spend a
5  week reading a textbook can represent me effectively, he could only
6  assist me with counsel. At least, all data so far confirms that
7  hypothesis. (Horowitz might have had the education of a scientist.)
8      ) While I document events specific to my case, the conditi-
9  ons creating the events are systemic, and are ~~oooooo~~ embraced
10  by State Law, State Courts, the State Legislature, the Alameda
11  County Board of Supervisors (though they made some effort), the
12  State Executive Branch, by every arm of State and County that
13  has the reach to touch it, making its review by Federal Court
14  appropriate to the spirit and letter of the ku klux klan Act
15  and the 14th Amendment.
16      ) It is especially improper where the defense denied
17  is, as in this case, one in which the State and County and
18  their Actors will be shown to have been at fault.
19      ) My alleging malice <u>and</u> ignorance as motivations is not
20  an inconsistency, it is rather evidence for the additional
21  allegations of repression and denial and delusion. Their hatred
22  of myself, and Rory my son, was a many layered ~~oooo~~ hatred, not
23  something of a simple purity. See civil case cross-complaint for more.
24      ) The hive mind of the California State Courts protects
25  itself from that which it does not want to know by making
26  it difficult ●for those on trial to go around those attorn-
27  ~~ys~~ ies who are socially integrated into it, by denying us the
28  communications we need to find socially independent attorn~~oo~~ies.

)c) The California State Prisons and Alameda County Jails interfere with effective access to the courts. Please see, in Reiser v. Reiser v. et.al. (supra.), my: "Motion For Protective Order", "Supplemental Brief For Motion For Protective Order", "Ex-Parte Motion For Temporary Restraining Order", and my prison and jail related causes of action in my Cross-Complaint. Please see also my habeas corpus, and this Complaint elsewhere herein. Please see my sundry motions for additional time in Reiser v. Reiser v. et.al. (supra.).

) The prison and jail staff performing the interference are State/County Actors acting under color of law. Many of the cited acts are pursuant to illegal State Laws, State/County Policies, State/County Practices, State/County Customs, and State/County Usages.

) That implies that the ~~deprivations~~ deprivations of civil rights are entitled to Federal Court review. Some of the rights deprived are rights of equality, due process, life, liberty, or the pursuit of happiness. — 14th Amendment rights. Grounds for jurisdiction include §1443, §1983, §1985, §1986, and 14th Amendment Bivens Action.

) d) The California State Courts routinely engage in ex-parte communications, and deny effective equal access to the courts. Please see the cause of action "Denial of ~~due~~ Due Process and Fair Trial --- Exparte Communications By State Courts And

1  Obstruction Of Justice  To Cover up Them"

2

3

4  ) e) Mempa v. Rhay (1967) 389 U.S. 128, 134   Failure To
5  Provide Attorney On Appeal.
6  ) The appellate court appointed an attorney who gave me the
7  advice that since my trial attorney had failed to file a timely
8  notice of appeal when he was requested to by me, I had no ability
9  to appeal.   This is incorrect as a matter of law, and fact,
10  see my two notices of appeal for details, plus ~~my habers corpos~~

11

12  ⊙ California Penal Code § 1240.1(b)

13

14  ) It ~~☒~~ is also malpractice.
15  ) I informed the appointed attorney of this, and other legal
16  errors of grave significance and centrality, in his advice (e.g.
17  my trial attorney informed me that I cannot waive ineffective
18  assistance of counsel, ~~☒~~ which remarkably enough is true so long as I am
19  represented by the ineffective counsel while making the waiver, and
20  ~~☒☒☒☒~~ is especially true  when the ineffective counsel has advised me
21  that the waiver has no legal effect so I should just go ahead and waive
22  it, ~~☒~~ and is yet even more true  when the counsel has a conflict of
23  interest (e.g. Heck v, Humphrey (supra,) ) in regards to my
24  making the waiver. )
25  ) After being so informed he refused to work on my case. ·
26  ) I then requested the appointment of counsel from the
27  appellate court. This was a long time ago, and my requests
28  of the clerks for information on the status of that request

1  are simply ignored.  I cannot go on the web to check whether it
2  has even been filed.

3      ) I also requested the appointment of counsel from the
4  California Supreme Court, which I am also entitled to because of
5  the failure to provide counsel at the first appellate level.

6      ) The California Supreme Court clerks refuse to process and
7  file my "Motion For Appointment Of Counsel" because they applied it
8  to the wrong writ, a writ that the Supreme Court had already
9  ruled on, and determined that it was therefor untimely.

10     ) (The right writ was the one that was in the same envelope.
11  They did not process that writ at all, returning it unfiled
12  along with the "Motion For Appointment Of Counsel". I keep sending
13  it back to them, and they keep finding a new wrong writ
14  to conflate with my filing.  Please see my "Motion To Deconflate
15  Petitions, And File Petition", especially all its attachments, which
16  are also relevant to the §170.3 argument/issue. However, beware, they
17  made the procedural issues extraordinarily complex, by their errors upon
18  errors, mostly variations on ignoring Houston v. Lack (supra.), and conflating
19  distinct writs, repeatedly, all of which is irrelevant to you, be-
20  cause a disqualified judge cannot undo his disqualification, and it
21  could be argued that I should have come straight to you
22  without trying to get them to acknowledge that they have
23  consented to their disqualification.
24

25  (I stated that I was not waiving my right to have a Federal Court
26  determine their disqualification, in my filings.)  This type of
27  denial of due process is evidence for my claims that denial of
28  laptop and court website access deny effective access to the courts.)

1  ) This failure to provide me with an attorney combines with
2  my trial attornies refusing to      file notices of appeal, the appellate
3  attorney falsely informing me that I could not appeal, the trial court
4  not sending its denial of my certificate of probable cause to me,
5  but sending it to the press, not even after repeated requests, and
6  all the other improprieties alleged herein (including its incorporations
7  by reference), to constitute a whole appropriate for the 14th
8  Amendment and the ku klux klan Act to be applied due to my
9  inability to enforce my rights in state court.

10    ) f) The State Courts have consistently denied me
11  access to the record, which contains evidence of their
12  malfeasance, and of the malfeasance of their hive (including
13  their clerks, court appointed lawyers,   etc.). This violates
14  Douglas v. California (1963) 372 US 353, 358, 83 S.Ct. 814. Note
15  that the State Superior Court mischaracterized the record in its
16  summation of the sentencing hearing, and then denied me a
17  copy of even the record for the sentencing hearing alone. That
18  summation mischaracterizing the record was the basis for its
19  denial of my certificate of probable cause which was necessary for
20  me to appeal. See my "Petition For Review To Enforce Douglas
21  v. California" S186172.

22    ) 6) Setting Proper Precedent For All State Court
23  Futile Complaint Cases: There is a 14th Amendment
24  interest in this court taking jurisdiction on necessary
25  check and balance grounds.

26    ) It would set a good and valuable precedent for this
27  Court to find that in general, where someone has establish-
28  ed a history of futile complaint to a local/state government,

1  especially if including complaint to its courts as in this case,
2  those State Courts should not be the ones to determine if
3  their non-response, or active aiding and abetting, necessitated
4  an otherwise unnecessary death.   Factually, and contrary to law,
5  those who the local legal system have failed are treated worse
6  for trying to get its actors to do their jobs before acting
7  themselves.   They should be treated better for it, and only a
8  different judiciary located far away can do so.   They are treated
9  worse because the locals are covering their hive mind shame
10  and guilt with hive mind anger and retaliation. Only elim-
11  inating the social connection necessary to hive mind social
12  cohesion can fix that.   That is why this case should be heard by
13  a judge and circuit with minimal social contact with California's
14  legal system.
15      ) "Prejudice in a local community is held to be a reason
16  for a change in venue." 100 U.S. 303 Strauder v. West Vir-
17  ginia (U.S. W. Va. 1879)
18
19      7)  If my reasoning that the damages should be in proportion
20  to the global economic impact of the scientific research that
21  was lost is accepted, then the damages per California Resident
22  are significant, and I assert that as grounds for the case to
23  not be heard in California.
24
25
26
27
28

1  ) C. Should §2254(b)(1)(B) Be Applied To This Case:

2

3  ) State Civil Court Denies Me The Right And Responsibility
4  To Focus On Criminal Appeal As Required By Federal Case Law:

5

6  ) In Heck v. Humphrey (supra.), Preiser v. Rodriguez 411
7  U.S. 475, 93 S.Ct. 1827, 36 L.Ed. 2d 439 (1973), and in other
8  case law I would quote explicitly if I had access to the law
9  library without state actors interfering with my Internet access at
10 the time of writing, it is conveyed that those convicted are
11 supposed to focus on their appeals and habeas corpus in their crim-
12 inal case in priority over civil lawsuits challenging the validity of
13 their convictions.
14     ) The State Superior Court in Reiser v. Reiser v. et.al. RG08406
15 84 (supra.)  has explicitly declined to let me do that, which
16 renders me incapable of timely filing my joint appeal/habeas corpus.
17     ) Absent your action, I believe I will eventually be time-barred in
18 my joint appeal/habeas corpus because of focussing on the needs of the
19 civil case, and then in the civil case I will be found to have lost the
20 right to raise the defenses that were time-barred in the joint appeal
21 and habeas corpus, and/or a separate habeas corpus.
22     ) The plaintiffs in Reiser v. Reiser (supra.) have a legitimate legal
23 right to prosecute their case that the Superior Court Judge might
24 be responding to, arguably.
25     ) Civil and criminal cases are separated not joined by State
26 Law,        so joinder is a bug fix available only in Federal Court.
27     ) Therefor, the law has a bug unless §2254(b)(1)(B) is applied
28 to handle this exception, and it should be applied.

1  ) Cumulative Weight Of Reasons To Apply Article III §2 Clause 1
2  And §2254(b)(1)(B) To This Case:
3     ) In A) to G) are reasons why the habeas corpus and civil
4  cases should be joined as one Case within the meaning of Article III
5  §2 Clause 1. In B), C), and F) are reasons why the State Courts should
6  not be the ones to hear the cases. In D) are reasons that any statute,
7  or statutory interpretation, including any reading of §2254, which bars the
8  joinder of the cases, requires that the procedures specified in the Constitution
9  for Constitutional Amendment first be followed before it is the Law.
10    ) The Court is asked to find that these combined reasons are sufficient
11  grounds for the application of §2254(b)(1)(B) to the habeas corpus portion of
12  this case, and for the cases to be joined in this Court for trial within it.
13  ) A Less Judicially Efficient Alternative:
14    ) If the Court finds to the contrary, then I ask if it finds it
15  proper to: 1) take jurisdiction of all issues herein, 2) suspend the
16  case except for those issues relating to access to the Courts (e.g.
17  access to an attorney, access to a computer, access to Court websites,
18  ex-parte communications, retaliation in violation of §136.1 and §1986
19  by prison staff, imposition of sanction, and issuance of injunctive relief)
20  3) and then after having done so remand the habeas corpus portion of
21  the case to State Court with instructions to exhaust state remedies, then
22  try the case once state court remedies are fully exhausted?
23    ) This has the very serious disadvantage that the State Court
24  being motivated by that described at length in B) could make
25  factual findings, and procedural defaults, and delays (e.g. refusing
26  to provide the record or copies of their orders) that federal courts are
27  required (unconstitutionally) to defer to. The result would be a complex,
28  protracted, biased, and contentious mess utterly lacking in judicial economy,

1  ) D. Haywood v. Drown Properly Abstracted, And

2  Boumediene v. Bush, Abrogate Cary v. Curtis:

3

4  ) I ask you to take the reasoning of 129 S. Ct. 2108

5  Haywood v. Drown (U.S. NY 2009), abstract it, and apply

6  it not to a State Legislature and Federal Law, but to

7  Congress and Constitutional Law.

8  ) What results will not be an original thought from

9  our generation, but rather a thought from 1845.

10  From the minority in 44 U.S. 236, 252-266 Cary v. Curtis

11  (U.S. NY 1845), to be more precise, where Justices Story

12  and McLean presciently predicted how both the New York

13  Legislature as described in Haywood (supra.), and Congress

14  as described in Boumediene v. Bush (U.S. 2008) 128 S. Ct 2229,

15  553 U.S. 723 would attempt to use jurisdiction limits as

16  a collateral attack on laws requiring the consent of others

17  to change. Please read their words.

18  ) The majority in 44 U.S. 236, 245 Cary v. Curtis (U.S. NY

19   1845) conflated the right to create ("ordain and establish"),

20  which belongs to Congress, with the right to control the

21  jurisdiction of ("The judicial power shall extend to...") which

22  belongs to the Authors Of The Constitution, for the District Courts.

23  ) Congress has the power to constrain only appellate jurisdiction,

24  under Art. III §2 cl.2, not original jurisdiction granted by Art. III

25  §2 cl.1 "The judicial Power shall extend to all Cases, in Law

26  and Equity, arising under this Constitution..."

27

28  ) A District Court may be a child of Congress, but it is an

1  adult child of Congress, and where it goes Congress may
2  not say.
3      ) A Federal District Court, once ordained and establish-
4  ed under Article III §1, is like a minister once ordained,
5  in that who the court attends to is no more under
6  Congress's control than who the minister attends to, and
7  if either of them should attend to the sorts of riff-raff
8  that are found in the prisons, neither Congress nor parishioners
9  may strip them of their ordination, to limit it.
10     ) 44 U.S. 236, 252 Cary v. Curtis (U.S. N.Y 1845) (the
11 majority opinion) is entirely to the contrary to this view:
12 "the judicial power of the United States, although it has its origins
13 in the Constitution, is (except in enumerated instances, applicable to
14 this court) dependent for its distribution and organization, and
15 for the modes of its exercise, entirely upon the action of Congress,
16 who possess the sole power of creating the tribunals (inferior
17 to the Supreme Court) for the exercise of   the judicial
18 power, and of investing them with jurisdiction either limited,
19 concurrent, or exclusive, and of with holding jurisdiction
20 from them in the exact degrees and character which to Congress
21 may seem proper for the public good.... It follows, then,
22 that the courts created by statute must look to the statute
23 as the warrant for their authority, certainly they cannot go
24 beyond the statute, and assert an authority with which they may
25 not be invested by it, or which may be clearly denied them."
26     ) 128 S. Ct. 2229, 553 U.S. 723, Boumediene v. Bush (U.S. 2008)
27 joins Haywood v. Drown (supra,)   in its embrace of the minority
28 opinion in Cary v. Curtis (supra,)  "The Constitution grants Congress

1  and the President ... , not the power to decide when and where
2  its terms apply. To hold that the political branches may
3  switch the Constitution on or off at will would lead to a
4  regime in which they, not this court, say 'what the law is.'..."

5       ) I am asking for an explicit recognition that Haywood v.
6  Drown (supra,) and Boumediene v. Bush (supra,)  have abrogated
7  Cary v. Curtis (supra,) , doing so in response to the   predictions
8  of justices Story and McLean being fulfilled to an extent that shocked the
9  conscience of the Supreme Court, and returning control over jurisdiction
10 to the Constitution.

11      ) The consequence of doing so will be large, but also clean,
12 for Congress has been eroding the rights of disfavored groups,
13 during our generation using jurisdiction control for the purpose.
14 Inapposite Case Law:

15      ) 126 S. Ct. 2378, 548 U.S. 81, Woodford v. Ngo (U.S. 2006) says
16 that state remedies must be properly exhausted, but does not
17 address unraised argument as to whether the requirement of
18 exhaustion is itself constitutional.    It is not, by the
19 combination of the argument above, and abstracting 108 S. Ct. 2302,
20 487 U.S. 131, Felder v. Casey, (U.S. Wis, 1988) from its finding
21 that a state cannot impose a notice requirement on a federal
22 law to finding that Congress cannot impose a notice requirement
23 onto a Constitutional grant of jurisdiction to a District Court.
24 Please substitute "Authors Of The Constitution" for "Congress" in this
25 quote from Felder (supra,): "Congress meant to provide immediate access
26 to the Federal courts and did not contemplate that those who sought to
27 vindicate their federal rights in state court could be required to seek red-
28 ress in the first instance from the very state officials whose hos-

1  tility to those rights precipitated their injuries."

2

3  <u>Factual Necessity Of An Independent Professional Judiciary As</u>
4  <u>Specified By The Constitution Not Congress:</u>
5  ) Based on information and belief I allege that the facts
6  stated in the Sacramento Bee article "The Public Eye: Due
7  process for prisoner proceedings allegedly violated" dated
8  8/1/10 (which will be attached if the prison permits it to be
9  copied (usually they don't allow us to copy articles for legal attachments)
10  otherwise it is available at sacbee.com I believe) are true.
11  ) Prison guards, who are also hearing officers, routinely
12  falsify evidence, intimidate victims during the hearings, and
13  falsify their official accounts (the "record") of what happened
14  during the hearings.
15  ) They act in combination with racially aligned gangs
16  to discourage "snitching", doing so routinely.   The "snitch-
17  ing" they intimidate includes complaints and witness testimony
18  concerning rights of equality being deprived, and involves
19  violence, and direct and indirect threats of violence. The
20  violence usually involves a stabbing on level 4 yards (which
21  have a "no-hands" policy enforced by the "shotcallers" for each
22  race).
23  ) The guards are socially motivated to do these things,
24  especially when complaints involve prison staff, by their
25  social network of other prison staff members.   They even
26  have a phrase for their instance of the hive mind effect,
27  they call it the "Green Wall". "The Green Wall" is a point
28  of pride not shame for them.   The uniforms of prison

guards in California are green.

) Making the prison grievance process a jurisdictional prerequisite for the Federal District Courts has effects in the California Prisons that include: 1) Facilitating systemic, witness and victim, intimidation and retaliation and tampering, plus evidence fabrication, 2) Delay, (which facilitates 1)), and 3) Allowing those who have an interest in it to maliciously generate procedural defaults, and take advantage of the prison appeal process inexperience of prisoners to deny them effective access to the courts, 4) to simply throw away the appeals of many prisoners much of the time, 5) to deny them access to the needed forms especially in Ad-Seg when they are most needed, and 6) to take away their appeals when taking away all their stuff.

) The grievance procedure involves sending the complaint first to the person who the complaint is about, and a year or so later after "exhausting" the appeal process, going to Federal Court. The retaliation and intimidation is immediate with sometimes serious consequences; the relief is distant in time.

) Retaliation from prison guards for filing complaints is the norm, not the exception. The overwhelming majority of prisoners are afraid to file appeals because they know they will experience retaliation. They also know the hearings usually will not be fair if they claim prison staff have done wrong, or are wrong. These fears are accurate: most prisoners have stories they can tell if asked to substantiate such fears.

) I am alleging 100,000+ felonies. Most prisoners in California Prisons have been the victim of at least the intimidation. These are often serious felonies — especially when they involve cell moves for safety reasons. I have personally experienced retaliation for demanding to be moved from a cell where threats of killing me,

1  breaking my bones, etc., were being made, and more than once.
2  This is their normal conduct.
3      ) The Prison Litigation Reform Act makes passage through
4  the prison grievance process a prerequisite to the judicial
5  power extending to a case brought by a prisoner (42 U.S.C.A § 1997 e(a))
6      ) As a result of retaliation for my use of prison grievance
7  procedures I was confined to my cell on "C-status" except for
8  < 10 hours per week, my typewriter and sundry other
9  possessions worth ~ $1000 were siezed,   and I will never be
10 paroled because of the writeups unless this court intervenes.
11     ) That makes the use of prison grievance procedures, and the
12 legal process including this lawsuit, a high-stakes in the extreme
13 gamble for me, and for any other life prisoner. Objectively
14 analyzed, use of the prison grievance procedure is not in the weighted
15 odds self-interest of myself, or other prisoners. The prison staff
16 know it, and it is their intention. No court has ever made it
17 in their weighted odds self-interest as a group to    cease their
18 practice of systemic retaliation, (This court can if it chooses to.)
19     ) Fortunately for me, when you get into the details of the
20 writeups it is discernable that they were retaliation. They were
21 clumsy. Most prison retaliation will not be so clumsy.
22     ) Please see my "Motion For Protective Order", "Supplemental Brief
23 For Motion For Protective Order", and "Ex-Parte Motion For Temporary
24 Restraining Order" in Reiser v. Reiser v. et. al. RG08406464 (supra.)
25     ) Based on information and belief I allege that: 1) the
26 Federal District Courts typically provide due process that
27 is materially superior to that described above, and 2) that
28 their having a legal education, lifetime appointment, career

1  specialization as a judge, salary protection, and on
2  average substantially less social connection to the parties,
3  contributes materially to that.
4      ) The model of the Authors Of The Constitution
5  is empirically proven by the cited observables to be more
6  effective at providing a fair trial than that of the
7  Authors Of The P.L.R.A.
8      ) Congress is trying to limit inconvenient Constitutional
9  Rights being exercised by an inconvenient class of people
10 with a tendency to sue interest groups who contribute money
11 and vote, and to do so without consulting the States or a
12 Constitutional Convention to obtain a Constitutional Amendment.
13     ) In so doing they prove the prescience of Justices Story
14 and McLean empirically. Their brilliance proven, let us acknowle-
15 dge them for it 155+ years later, and accept the Constitution as its
16 plain language states it to mean, rather than looking to the
17 penumbra of conflation of jurisdiction and creation (503 U.S. 249,
18 253-254, 112 S.Ct. 1146 Connecticut National Bank v. Germain (1992)) any more.
19
20     ) Constitutional Rights and Grants of Powers Require
21 Constitutional Amendment To Change Them:
22     ) I do not claim that there are no disadvantages to
23 allowing the judicial power to "extend to all Cases, in Law
24 and Equity, arising under this Constitution..." for all District
25 Courts. Personally, I think all Factitious Disorder By Proxy (F.D.B.P.)
26 cases should be tried by judges who specialize in F.D.B.P. cases,
27 and that the District Courts would benefit as much from specializa-
28 tion as any other profession can.

1    ) My claim is merely that reducing the jurisdiction of the
2  District Courts requires the use of the specific procedure
3  defined by the Constitution for Constitutional Amendment,

4    ) Congress has the power to define what District Courts
5  exist in what Districts to receive the claims initially filed in
6  those districts, and given those definitions made by it of what
7  district a given court is, it may employ those definitions of
8  districts in its definitions of appellate structures, so that it
9  may, say, ensure that for each District Court there is one defined
10 Appellate Court for it, or, the complicated thing it did.

11   ) This reading makes a non-issue of jurisdiction over Guantanamo,
12 American flagged vessels in international waters, U.S. Citizens abroad,
13 persons having custody of prisoners being distant from relevant witnesses,
14 and more.   It means that this District Court can prevent the
15 kidnapping of my children being a successful stratagem to
16 prevent their testifying on my behalf against those who aided
17 and abetted their kidnapping (see civil case Cross-Complaint (supra,)), by
18 holding the trial in the St. Petersburg Consulate, and drafting jurors
19 as they walk in the consulate, so as to accomodate the kidnappers
20 while obtaining the  testimony of the children.  (The children
21 have in the past been diagnosed as neurologically incapable of travel
22 to America, when that was convenient to the legal needs of the
23 kidnapping conspiracy which included numerous State and County Actors.
24 The diagnosis was false, they knew it was false, and I could not
25 compell my State/County Court Appointed Lawyers to seek the imposition
26 of sanction for it.  I will be asking  this Court to impose that sanction)
27   ) Where Congress dislikes how the "Judicial Power" has construed
28 the Constitution, Amendment not statute is their only remedy,

1  <u>128 S.Ct. 2229, 553 U.S. 723, Boumediene v. Bush (U.S. 2008)</u>

2  "The Constitution grants Congress and the President ..., not the

3  power to decide when and where its terms apply.  To hold that

4  the political branches may switch the Constitution on or off at

5  will would lead to a regime in which they, not this court, say

6  what the law is.'"

7

8  <u>Plain Language v. Penumbra:</u>

9    ) The Courts have previously found that a separation of powers

10  penumbra argument is insufficient to overcome the creation juris-

11  diction conflation penumbra.

12    ) The current Supreme Court disfavors penumbra arguments.

13  There are advantages to having the intellectual honesty to ask

14  for an acknowledgment that past case law contrary to one's

15  position has been implicitly abrogated by recent case law.  The

16  minority in <u>Cary v. Curtis (supra,)</u> was making a plain language

17  argument, and the majority a penumbra argument (at best).  The

18  penumbras may conflict, but the plain language in this case is clear,

19  and empirically proven wise.  <u>Connecticut National      Bank v.</u>

20  <u>Germain (supra,)</u>

21    ) <u>Boumediene v. Bush (supra,)</u>: "[e]ven before the birth of

22  this country, separation of powers was known to be a defense against tyranny

23  ", c.f. <u>Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 635, 72 S.Ct.</u>

24  <u>863, 96 L. Ed. 1153 (1952)</u> ( Jackson, T. concurring)' The problem with

25  that argument is deciding whose powers most need to be separated.

26  The majority in <u>Cary v. Curtis (supra,)</u> were admirably hesitant to be

27  the ones determining the limits of the   power of their subordinate

28  Courts, so they gave it to Congress.  It belongs with the Constitution.