1   The State Court then changed the date of the hearing, and
2   the opposing party renoticed me with the changed hearing date.
3   The prison mail logs plus the proof of service for the revised
4   notice of hearing dated June 2nd together with the prison always
5   delivering legal mail in the afternoon prove that I received the
6   revised notice after the law library closed in the afternoon, which
7   is to say, after filling out the form declaring the date of my ~~court~~
8   deadline, on June 4th, 2010.
9       On the morning of June 4, 2010, I filled out a Priority Legal User
10  form saying that I had a deadline based on the original hearing date
11  which was all I had received notice of at that time.
12      The prison denies me access to the State Court's website. Please
13  see my section on interference with effective access to the courts, and
14  ex-parte communications by the State Court described elsewhere herein.
15  This was an instance of both, producing actual injury, as document-
16  ed herein.   The State Of California punished me, and its State Actors pun-
17  ished me, under color of law, for not doing that which it prohibited and
18  prevented me from doing, checking the deadline, on the court website.
19      Miss Hammond called the State Court, and was told the changed hearing
20  date. [Prison law librarians do not normally do this. (Dr. Muhammad, her
21  supervisor, has since said to me that they won't be doing this in the
22  future, that they will rely on the documents submitted to them, saying
23  this during a hearing.) This is evidence that Miss Hammond was mak-
24  ing an extra effort to find a pretext to retaliate.]
25      She then wrote me a writeup for violating rule 3021.
26  Falsification of Records or Documents., and "falsifying CDCR 2171
27  state document".   The rule reads in pertinent part:
28

1  "Inmates and parolees must not <u>intentionally</u> enter or introduce false
2  information into or upon any record or document maintained by the
3  Department of Corrections." [underlining added]

4     At the hearing on the writeup (a "115") conducted by Lt. Barroga I
5  provided the notice of hearing and its proof of service. I explained
6  that her writeup documents that I filled out the form in the morn-
7  ing, and told him that the mail logs plus the proof of service plus
8  their always delivering legal mail when they do (after 2pm, normally
9  after 2:30pm) would prove that I could not have received the notice
10 until after filling out the form.

11    I asked him to examine the mail logs, which he had access to, and
12 I had not yet obtained a copy of (I subsequently attached them to my
13 appeal). He said he didn't need to do that.

14    He spent the whole hearing hunting for a way to find me guilty.
15 There was none, I had complete proof of my innocence, and was
16 unyielding in it. There was no legitimate way for a jurist to
17 find me guilty.

18    He found me guilty anyway, and made the punishment exception-
19 ally harsh for the allegation: 60 days loss of yard and dayroom.

20    I was upset about this, and after I got my mail logs I filed my
21 appeal without waiting to receive his written findings before appealing.

22    Lt. Barroga has "priors" for falsifying records, see <u>Birdwell (supra,)</u>
23 CDCR generally engages in a systemic pattern of falsifying records and
24 evidence, see elsewhere herein.

25    Being upset about, being found guilty despite all the evidence, and
26 the exceptionally harsh punishment, in my appeal I wrote about how
27 CDCR punishes those who don't plead guilty extra harshly.

28    Lt. Barroga may not have much education, but he knows how to

1 lie.   He changed what I had said at the hearing into and
2 effective equivalent of a confession of guilt by deleting the
3 word "not" from one of my statements, albeit a confession of
4 guilt in which the pieces don't quite fit right, because I am
5 still described as pleading not guilty and claiming that an
6 opposing party sent me supporting evidence to support the court
7 deadline (which he makes an effort to delegitimize for its not hav-
8 ing been sent by the court itself).

9    This deletion of the word "not", and the omission of
10 my extensive and legally decisive argument that the form
11 was filled out in the morning, and the changed notice of hearing
12 was not received until the afternoon, plus the omission of my
13 argument that it was not a knowingly false statement that was
14 made on the form and thus lacked the mens rea necessary for it
15 to be a violation of the law ( Statutes may proscribe criminal
16 negligence 12 F. 245 U.S. v. Thomson (D. Or. 1882); 84 SCt. 559, 376 U.S.
17 86 U.S. v. Weisenfeld (U.S. Fla. 1964)  but may not require the
18 possession of knowledge where that knowledge is infeasible or
19 unreasonable to acquire, and to require such knowledge would
20 effectively burden a constitutional right (e.g. effective access to
21 the courts) 73 S.Ct. 215, 344 U.S. 183 Wieman v. Updegraff
22 (U.S. Okla. 1952); 84 S.Ct. 1697, 378 U.S. 347 Bouie v. City
23 of Columbia (U.S. S.C. 1964); especially 80 S.Ct. 215, 361 U.S. 147,
24 Smith v. People of the State of California (U.S. Cal. 1959). The
25 Court may find a mens rea argument unnecessarily complex, given that
26 the cited rule Title 15 §302(?) explicitly requires intentionality, but I was
27 ~~entitled~~ entitled to have it and all else part of the record of the hearing.)
28 from the written account of the hearing denied me my due process

1 State and Federal Constitutional Rights, and my 14th Amendment
2 Right to my State Law Rights.

3    At the hearing Lt. Barroga rejected my claim that the statement
4 had to be knowingly false for me to be guilty, and said that what
5 I put on the form was either true or not, and since I conceded
6 that it was not true, I was guilty, or words to that effect.

7    An independent professional jurist, or even any reasonable human
8 being with no social motivation to find me guilty, would have
9 found me innocent.

10    This was an especially egregious burden on a constitutional
11 right ~~given~~ since it is the State and its Actors that prevent access
12 to the knowledge required of me, and my reliance on the written
13 notice of the hearing was reasonable.

14    I believe that when he received my appeal of his guilty
15 finding that he made orally at the end of the hearing, he modified
16 his written findings without modifying the date on them, or
17 that he backdated them.

18    This writeup was one of the two writeups that provided
19 the color of official right for my being placed on C-status
20 for receiving two 115's within a 6-month time frame. See elsewhere
21 herein for the consequences of my being placed on C-status.

22    The expected value (in the Bayesian Probability Theory sense of those
23 words) of the lengthened prison term is far graver, due to its effect
24 on parole.

25
26
27
28

Leveraging Outdoor Exercise To Hinder Court Access And A
Law Library Related Retaliatory Writeup At P.V.S.P:

1

2     Ms. Castillo engaged in the conduct complained of in the
3 section herein on interference with effective access to the Courts.
4     I complained of this in 602's (and later to the Courts includ-
5 ing to this court).
6     Being possessed of that sense of humor depicted so well by
7 Orwell, she gave me a writeup for failing to attend the law
8 library while being on the Priority Legal User list, on 2/22/11.
9     Pleasant Valley State Prison has a very restricted program compar-
10 ed to M.C.S.P. Each tier is allowed onto the yard separately only, which
11 cuts the amount of yard time in half. They have rolling lockdowns
12 that cut the yard time even more, and have "staff shortages" that occur
13 with a frequency that is not possible if the prison management do not
14 want them to occur. The staff shortages are handled by lockdowns.
15 The effect is comparable to being on C-status, for the whole prison.
16 The relevance of the above is that we don't get enough exercise, some
17 weeks much more than others (there have been weeks with ~~a quite a~~
18 one day of yard, and that just a short yard time).
19     Ms. Castillo has a practice of retaliating against inmates who
20 sue staff, or complain. This has affected myself, prisoner
21 David, and many others.
22     Her writeup, by constituting a policy in which being on
23 the Priority Legal User list means not being able to exercise,
24 violates existing case law forbidding making prisoners choose
25 between access to the law library and exercise.
26
27
28     It reflects a systemic practice throughout CDCR of going out

1   of their way to maximize the conflict between outdoor exercise, and
2   effective access to the courts via the law library, and is a retaliation
3   for accessing the courts.
4        This was also a problem at San Quentin State Prison, where we
5   had outdoor exercise only twice a week while in "reception", and the
6   one time per week that we were allowed to go to the law library for an
7   hour and 15 minutes that they called 2 hours, they scheduled that trip to be
8   during yard time. I was there ~~on a chrono~~ from 9/5/2008 to 1/29/2009.
9        As the cases cited point out, going to a law library does not satisfy
10  the physiological need for exercise.
11       There is a history of heart disease among the men in my family,
12  especially if they don't exercise. I am told my grandfather died of a
13  heart attack at an age younger than I am, and I am seriously concerned
14  by that whenever I get insufficient exercise.
15       While in Ad-Seg where I was kept for 26 days in retaliation for
16  having a lower bunk chrono, yard and access to materials that we paged
17  from the law library were made to conflict. They did not allow us
18  access to a law library except by "paging" materials from it,
19  which we were only allowed to access while in a small cage for 2
20  hours per week, if we were lucky, and if we declined yard.
21       The use of such a paging system violates Federal Case
22  Law: <u>Abdul-Akbar v. Watson (1991, DC Del) 775 F Supp 735</u>
23       I allege multiple flavors of retaliatory motive: 1) a systemic prac-
24  tice affecting all inmates of retaliation for attempting to access the courts in
25  general by creating disincentives lacking a compelling necessity, 2) prisoner
26  specific (me) retaliation by staff manifested as harm to effective access to
27  the courts, and 3) a specific writeup using 1) to provide the color of
28  official right for 2).

1    Ms. Castillo would issue "passes" for us to go to the law library at
2  8:30am while we were on the Priority Legal User list (though there were
3  days when she failed to issue them to me), but my being called for the
4  law library at 8:30am occurred mostly if not entirely prior to my filing
5  my complaint about her reading and deciding whether she thought
6  my 602's were proper, and discussing them with others. After my
7  complaint she tended to not call for me to be allowed to come.

8    Her tendency to call for inmates to be allowed to come to the law library
9  was generally correlated with the extent to which she liked them. It
10 was a favor she enjoyed doling out, in which her doing her job was
11 a special gift she was generously making, as she presented it.

12   Merely possessing her pass was not enough for the building guards —
13 she had to call them, for us to be allowed to go.

14   On the day for which I was given the writeup, I was not allow-
15 ed to go at 8:30am, but had to wait for yard to open, despite the pass.

16   There were days when the pass said 8:30am, and I was not
17 allowed to go until yard open at 2:30pm., and other days when I
18 was not allowed to go at all, because there was no yard, even though
19 being on the PLU list was supposed to allow me to go.

20   Discriminatory and retaliatory control over effective
21 access to the courts, or anything under State control, is against
22 the law, regardless of whether there is a duty to provide it in
23 the absolute amounts asked for (though I also claim that there is
24 such a duty), as it violates the equal porotection clause, 18 U.S.C.
25 §1503, 18 U.S.C. §1513, C.C.C. §1209(a)8, the inherent authority of
26 the court, R.I.C.O., and other laws.

27   By calling for me not when the yard is closed, but when the
28 yard is open, Ms. Castillo humorously and illegally subverts the P.L.U. list purpose.

<u>Systemic Collusion With Criminal Gangs In Deterring "Snitching"</u>:

1     Please see my preceding discussion of CDCR employing criminal
2 proxies to deterr requests to be moved due to unsafe cellies.

3     Some inmates claim that California Prisons are the most thoroughly
4 gang controlled in America, on the mainline, but of my own know-
5 ledge I can only say that they are, on the mainline, thoroughly gang
6 controlled. It is enough.

7     The collusion with criminals to deterr "snitching" also
8 affected me when I was attacked for being too friendly with
9 blacks on 11-06-08, and given a "115" writeup for "mutual combat"
10 after having been deterred from making statements as to my
11 innocence.

12     They knew I was innocent, but they have a whole set of
13 customs involving providing paperwork to inmates that other inmates
14 can rely on when they demand to check it.

15     At San Quentin, if you "snitch" to establish your innocence, the
16 C.O. will announce ~~you are~~ "innocent" as he leads you past the other
17 inmates, so that the gangs will know that you snitched. This
18 happened to me the second time I was attacked for being
19 too friendly with blacks, this time by 5-6 people (I didn't
20 count them at the time).

21     Then, when I was no longer on the "mainline", they
22 would not correct the 115 because they have great problems
23 as an institution admitting error. This was true even though
24 I had successfully tricked my attacker Mike Marlin into put-
25 ting in writing on a kite a defacto confession that I was attacked
26 by him for being too friendly with blacks due to "politics" not
27 "personal" reasons, which in prison slang means it was a gang sanctioned/ordered attack.

1  While I was in Ad-Seg after the second attack the "investigator"
2  asked me if I wanted to call any witnesses while I was within the
3  hearing of neighboring inmates.   This is a common, perhaps standard,
4  practice.

5      There were inmates around while I was being questioned about
6  the first attack.

7      When I say that they have great problems as an institution
8  admitting error, I include in that that they seek to coverup their
9  being run by racist gangs acting in collusion with prison staff, and
10 retaliate against ~~those~~ my suggesting that by denying me my
11 reversal of my 115 when it is otherwise clearly warranted.

12     Please see my sections regarding systemic racism herein, and in
13 the Cross-Complaint in <u>Reiser v. Reiser v. et.al. RG0840864</u>  that I ask
14 this court to order the prison to copy so I can file it.

15     Please also see my section on "Disregardance Of Title 15 Required
16 Notice Deadlines For 115", which discusses this same 115.

17

18

19 <u>Removal Of 115 By CDCR without ~~Removal~~ Compensation:</u>
20     After I ~~have~~ received my 115 for asserting my lower
21 bunk chrono, and exhausted my appeal of it, Rosen, Bien & Galvan,
22 acting in their role as prison overseers if I understand correctly, wrote
23 CDCR a letter, and my 115 was ~~removed~~ removed from my C-File, and I
24 was removed from C-status after 83 days of being on it, as a result.
25     My siezed property was not returned, and I was not paid
26 compensation for the wrongs done to me.
27     Rosen, Bien, & Galvan oddly did not make damages within the scope
28 of their <u>Armstrong (supra.)</u> litigation, and so I must come to you

1  for that relief.

2      I have been informed that there are other instances of retaliation

3  in the Armstrong (supra.) case by Rosen, Bien, & Galvan, and I believe

4  and allege it to be true. (An attorney is requested to be appointed to

5  represent the class.)

6

7  <u>Retaliatory Prison Transfer</u>

8      Mr. Birdwell has told me, and I believe and allege it to

9  be true, that my being transferred to P.V.S.P. was part of a

10  retaliatory act in which persons who sued ~~were complained to~~

11  ~~made their at first see~~ were transferred from M.C.S.P. under the

12  guise of reducing the prison population, including persons who

13  did not meet the stated guidelines for the class of persons that

14  were supposed to be transferred (e.g. Mr. Birdwell and myself).

15      It is notable that on the day that I arrived at P.V.S.P.

16  a van of prisoners were sent from P.V.S.P. to M.C.S.P.

17      P.V.S.P. has half as much yard time, Valley Fever (an obscure

18  serious permanent fungal infection and orphan disease common here),

19  is hotter, and my Mom cannot visit due to the distance. The

20  guards here are known for beating prisoners when they retaliate.

21      CDCR simply ignored California Law requiring that they try

22  to place me in a prison near my aging mother, despite my raising it.

23      Mr. Birdwell has told me, and I believe and allege it to be true,

24  that in order to conceal the retaliatory nature of the transfers, prison

25  staff have falsified state documents, and done so in a deliciously

26  provable way.   That constitutes obstruction of justice, which is a

27  R.I.C.O. predicate act, and grounds for sanction as well.

28

## Retaliatory Retention In Ad-Seg For 26 Days:

On my arrival at P.V.S.P., after a day of discomfort in transit during which I could not do legal work, I was placed in Ad-Seg for 26 days.

The sole grounds for this that were claimed were that I had a lower bunk chrono.

It is the practice and policy of P.V.S.P. to retaliate against prisoners with lower bunk chronos by placing them into Ad-Seg when they arrive, for 40-70 days according to what I was told, at the time I arrived.

The punishment of those with lower bunk chronos has multiple layers of unnecessariness:

1) There is no necessity to transfer them to a prison that ~~claims~~ claims to only have space for them in Ad-Seg.
~~2) I believe that they did have lower bunks available~~

2) If they had truly wanted to, they could have put us in lower bunks, somewhere. Details if requested.

3) When they put us in the cells that were in Ad-Seg, they did not need to impose the disciplinary conditions of Ad-Seg. They took all my stuff, and they did not need to do that. They deprived me of access to yard, and they did not need to do that. They deprived me of access to the law library, and they did not need to do that. They deprived me of access to ~~frequent~~ daily showers, and they did not need to do that. They took away my ability to have more than underwear to wear, and then played temperature torture games with the air conditioning, like at Guantanamo, though for me it was not as extreme as Guantanamo.

1   I say for me, because I have an unusually robust metabol-
2   ism.   I was cold enough that I would curl into a tight ball
3   under the blanket, covering my head with the blanket as well,
4   even though the nurse had told me at that time that due to my bad
5   neck I needed to sleep on my back, at night, and during the day
6   I would exercise.

7   (Since they had taken everything, even pens and paper, I
8   exercised a lot, there was not much else I could do.  I went to
9   great lengths to get paper, and was able to get some, but not
10   enough, never enough, so I exercised to stay warm.)

11   Please consider that those prisoners who have lower bunk/
12   lower tier chronos are frequently persons with severely impaired
13   metabolisms.   For them, <u>it is</u> Guantanamo.

14   Temperature torture of a class of persons that may reasonably be expected
15   to contain a high percentage of the seriously unwell, is a serious flavor of
16   both retaliation, and cruel and unusual punishment.

17   As of 7-3-11, I still have not been allowed access to my legal boxes
18   taken from me.  They gave me only 3 of my legal boxes out of 7
19   that they said they had.  I worry about whether they really still
20   exist — I need them at trial especially, and also for discovery, and I
21   just plain need them.

22   The decision to transfer me was made by Captain Kaplan, the
23   committee he ran which selected me for transfer (containing C. Cser, Kissel,
24   Fletes), all of whom were part of the retaliation, and then ratified
25   by CSR Gomez.

26   See the section on falsification of the record of hearings for
27   how they claimed I was in agreement with their decision, when, in fact,
28   I had objected to it, and then appealed it.

## The Retaliation I Experienced Is Systemic Throughout The California Prisons Affecting All Inmates.

While the details of the particular incidents cited are unique to me, the practice of retaliation is so common that it is simply expected by every inmate that if they complain there will more likely than not be a retaliation for it. ¶

The overwhelming majority of prisoners avoid filing complaints for that very reason.   Those prisoners warn other prisoners that if they complain they can expect retaliation not remedy as the most likely result of the complaint,   Those warnings are factually accurate.

As a result, when those prisoners are beaten, robbed, extorted, defrauded, threatened, raped, and more,  the Law offers no shelter for them, ~~not for the overwhelming majority of them sensible enough to fear the retaliation more.~~

Will you offer them shelter in your court? Will the Law mean something more than a dream for fools in your Court?

I say little that is not known by hundreds of thousands, but ~~~~ unlike the rest, I say it here and now, in your court.

If you, and the jury, choose to provide a remedy, it will not be a small legal task, nothing that affects hundreds of thousands, ~~ever is~~ and is done properly, ever is.

Your decision will, however, matter.

1  I ran out of time, needing to do a second draft for concision
2  and coherence ~~and~~ especially in the Grounds For Jurisdiction section, and
3  also needing to recopy for neatness, right before the Prayer, so
4  I offer this abbreviated prayer...., and hope the Court will
5  allow fixing the deficiencies at a later time, as I fear the
6  State Court won't wait, and I want a trial in a Federal Court
7  removed from local politics. Some denial of due process pages may be missing?

8  It is also missing many needed attachments, which will have
9  to come later, I pray for time to fix the deficiencies. It needs T.O.A.+Tuc
10 Prayer!

11  I pray for such relief as is just.

12
13

14  I ran out of time to do paragraph numbering also. I did not
15  have time to read about "counts" before sending. I need to review C.O.'s for a
16  complete Defendants list.

17
18
19
20
21
22

23  I declare the above to be true under penalty of
24  perjury.   Executed on: 7-20-11 at P.V.S.P. in the City
25  of Coalinga, at 24863 West Jayne Ave, Fresno County, California, U.S.A.

26
27

28  Hans Reiser

I, Lance W. Green, do declare:

I witnessed Hans Reiser attempt to get a copy made of his Reply document on 7/15/11, and be refused in his request. When he attempted to get the law librarian to tell him directly of the refusal, she shut the law library early, and avoided coming near him such that he would be able to ask her to confirm the refusal directly.

This act of retaliation interfered with my legal work.

Mr. Reiser was told that the reason she would not copy it was that she ran out of time. While he was waiting for his copy to be made, which was requested by him shortly after the library opened, she appeared to be doing nothing more than gabbing with other staff, etc. There was plenty of time for her to make the copies, or have an idle clerk do it.

She did not involve the Captain in the refusal to make the copies.


*Lance W Green*


I am over 18 years of age.

I declare the above to be true under penalty of perjury. Executed on: 7, 18, 2011 at P.V.S.P. in Coalinga, Fresno County California, 24863 West Jayne Avenue, U.S.A.


*Lance W Green*

**Government Claims Form**
**California Victim Compensation and Government Claims Board**
**P.O. Box 3035**
**Sacramento, CA 95812-3035**

**1-800-955-0045  www.governmentclaims.ca.gov**

State of California

For Office Use Only
Claim No.:

## Is your claim complete?

- [ ] *New!* Include a check or money order for $25 payable to the State of California.
- [ ] Complete all sections relating to this claim and sign the form. Please print or type all information.
- [ ] Attach receipts, bills, estimates or other documents that back up your claim.
- [ ] Include two copies of this form and all the attached documents with the original.

## Claimant Information

**1** Last name: Reiser  First Name: Hans  MI: T  **2** Tel: —
**3** Email: —

**4** Mailing Address: P.O. Box 8500, P.V.S.P.  City: Coalinga  State: CA  Zip: 93210

**5** Best time and way to reach you: mail or visit

**6** Is the claimant under 18?  [ ] Yes  [X] No  If YES, give date of birth: MM __ DD __ YYYY __

## Attorney or Representative Information

**7** Last name: Reiser  First Name: Hans  MI: T  **8** Tel: —
**9** Email: —

**10** Mailing Address: P.O. Box 8500, P.V.S.P.  City: Coalinga  State: CA  Zip: 93210

**11** Relationship to claimant: self

## Claim Information

**12** Is your claim for a stale-dated warrant (uncashed check) or unredeemed bond?  [ ] Yes  [X] No

State agency that issued the warrant: _____  If NO, continue to Step **13**

Dollar amount of warrant: ____  Date of issue: MM __ DD __ YYYY __

Proceed to Step **22**

**13** Date of Incident: starting in 2004, and continuing as a crime today

Was the incident more than six months ago?  [X] Yes  [ ] No
**14** If YES, did you attach a separate sheet with an explanation for the late filing?  [X] Yes  [ ] No

State agencies or employees against whom this claim is filed:
CDCR, California Judiciary

**15** Dollar amount of claim: $1 trillion + for me, and each of 2 children, $3 trillion total

If the amount is more than $10,000, indicate the type of civil case:
[ ] Limited civil case ($25,000 or less)
[ ] Non-limited civil case (over $25,000)

Explain how you calculated the amount:
Value of lost scientific research due to my incarceration and separation from my children, injuries to myself and children

**In Forma Pauperis**

**California Victim Compensation and Government Claims Board**
P.O. Box 3035
Sacramento, CA 95812-3035

1-800-955-0045 • www.governmentclaims.ca.gov

For Office Use Only

Claim No.:

---

*I request a fee waiver so that I do not have to pay the $25 fee to file a government claim with the Victim Compensation and Government Claims Board. I cannot pay any part of the fee.*

## Claimant Information

**①** Reiser (Last name)  Hans (First Name)  T (MI)  **②** Tel: ☒☒☒ - ☒☒☒ - ☐☐☐☐

**③** Claim Number (if known): ☐

## Employment Information

**④** My occupation: Prisoner

My employer: none

| Employer's Mailing Address | City | State | Zip |
|---|---|---|---|

My spouse's or partner's employer:

| Employer's Mailing Address | City | State | Zip |
|---|---|---|---|

## Financial Information

**⑤** I am receiving financial assistance from one or more of the following programs. ☐ Yes  ☒ No

If no, proceed to step ⑥ If yes, check all that apply, then skip to step ㉔.

☐ SSI and SSP: Supplemental Security Income and State Supplemental Payments Programs

☐ Calworks: California Work Opportunity and Responsibility to Kids Act

☐ Food Stamps

☐ County Relief, General Relief, or General Assistance

**⑥** Number in my household and my gross monthly household income, if it is the following amount or less:

| | Number | Monthly family income | | Number | Monthly family income |
|---|---|---|---|---|---|
| **A** ☒ | 1 | $969.79 | **F** ☐ | 6 | $2,626.04 |
| **B** ☐ | 2 | $1,301.04 | **G** ☐ | 7 | $2,957.29 |
| **C** ☐ | 3 | $1,632.29 | **H** ☐ | 8 | $3,288.54 |
| **D** ☐ | 4 | $1,963.54 | **I** ☐ | There are more than 8 people in my family | |
| **E** ☐ | 5 | $2,294.79 | | Add $331.25 for each person. | |

Number: ☐  Total Income: ☐

If you checked a box in step ⑥ A through I, skip to step ⑲

**⑦** If you are an inmate in a correctional facility, please attach a certified copy of your trust account balance, enter your inmate identification number below and skip to step ㉓.

Inmate Identification Number: G31008

My income is not enough to pay for the common necessaries of life for me and the people in my family, and also pay the filing fee.  ☐ Yes  ☐ No

If yes, fill in steps ⑲ through ㉔.

1  I, Lance W. Green, do declare:

2  I witnessed Hans Reiser attempt to get a copy made of

3  his Reply document on 7/15/11, and be refused in his request

4  . When he attempted to get the law librarian to tell him

5  directly of the refusal, she shut the law library early, and

6  avoided coming near him such that he would be able to

7  ask her to confirm the refusal directly.

8  This act of retaliation interfered with my legal work.

9  Mr. Reiser was told that the reason she would not copy

10  it was that she ran out of time.   While he was waiting

11  for his copy to be made, which was requested by him shortly

12  after the library opened, she appeared to be doing nothing more

13  than gabbing with other staff, etc.   There was plenty of

14  time for her to make the copies, or have an idle clerk do it.

15  She did not involve the Captain in the refusal to make the

16  copies.

17

18

19  *Lance W Green*

20

21

22  I am over 18 years of age.

23

24  I declare the above to be true under penalty of perjury.

25  Executed on: 17, 18, 2011 at P.V.S.P. in Coalinga, Fresno County

26  California, 24863 West Jayne Avenue, U.S.A.

27

28  *Lance W Green*